**Application of Dihrendra Ranchhoddas MERCHANT.**

**Appeal No. 78–508.**

United States Court of Customs and Patent Appeals.

May 11, 1978.

Carl A. Hechmer, Jr., Wilmington, Del., Robert G. Hoffmann, attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Robert D. Edmonds, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

Appeal from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining rejections of claims 1–6 under 35 U.S.C. § 103 of appellant's application serial No. 354,715, filed April 26, 1973, for "Purification of Gaseous Hydrogen Chloride."[1] We reverse.

## The Invention

The invention relates to a dry process for the removal of hydrogen fluoride (HF) contaminant from gaseous hydrogen chloride (HCl). The process is primarily used to treat contaminated hydrogen chloride gas which is obtained as a by-product in commercial processes for the production of fluorinated hydrocarbons. The contaminated gas is contacted with solid, particulate, substantially anhydrous calcium chloride ($CaCl_2$) to remove the hydrogen fluoride and to produce solid calcium fluoride ($CaF_2$) and essentially pure hydrogen chloride. The hydrogen fluoride removed by chemical reaction is converted to additional hydrogen chloride according to the reaction:

$$2HF + CaCl_2 \longrightarrow CaF_2 + 2HCl.$$

Claim 5 is the broadest claim:

5. A process for purifying a gaseous hydrogen chloride mixture containing minor proportion of hydrogen fluoride contamination which comprises passing said mixture in contact with solid, particulate, substantially anhydrous calcium chloride to effect substantial removal of the hydrogen fluoride from said mixture.

The remaining claims recite additional limitations relating to the reaction temperature, the concentration of hydrogen fluoride in the contaminated gas, and the presence of volatile halogenated hydrocarbons in the gas. Patentability has not been separately argued for these narrower claims.

## The Rejection

The references relied upon by the examiner and the board are:

| | | |
|---|---|---|
| Comstock | 2,321,282 | June 8, 1943 |
| Pring | 2,919,174 | December 29, 1959 |
| Lowdermilk | 3,140,916 | July 14, 1964 |

All claims were rejected as unpatentable over Lowdermilk and Pring alone or further in view of Comstock.

Lowdermilk teaches that prior art methods for removing contaminated HF from by-product HCl have included selective absorption of HF using alumina and contacting of the gases over successive solid reactant masses, e. g., silica, boric acid, or bases. In Lowdermilk's process the contaminated gas is scrubbed with dilute solution of hydrochloric acid to absorb substantially all the HF and HCl gas; the scrubbing solution is allowed to become enriched with HCl and is then fed to a heated stripping tower, from which anhydrous HCl is recovered as an overhead product; the stripper bottoms product is allowed to accumulate HF, is cooled, and is then treated with $CaCl_2$, preferably in the form of a saturated solution, to form filterable calcium fluoride crystals by the metathesis reaction:

---

1. A continuation-in-part of serial No. 153,839, filed June 16, 1971.

$$2HF + CaCl_2 \longrightarrow CaF_2 + 2HCl.$$

Pring discloses a process for the removal of fluoride gases from air and other gaseous systems by dispersing finely divided dry calcium carbonate ($CaCO_3$) in the contaminated air and passing the air, containing fluidized particles, through a filter to separate the particles from the air. Pring teaches that, to achieve substantially complete removal of the fluorides, the amount of $CaCO_3$ used should be not less than the theoretical amount, and preferably two to four times the theoretical amount, required by the reaction:

$$2HF + CaCO_3 \longrightarrow CaF_2 + CO_2 + H_2O.$$

Instead of calcium carbonate, Pring's process can use "alumina, activated alumina, magnesia, slaked lime, burnt lime, other basic salts of alkali and alkali earth metals and other dry particulate substances capable of reacting with acids." Pring also teaches that his process can be used effectively to remove gaseous chlorides, bromides, and iodides from air.

Comstock[2] discloses a process for producing dry HCl from dilute aqueous hydrochloric acid by heating the acid in the presence of solid anhydrous $CaCl_2$.

The examiner asserted that Lowdermilk shows (1) that it is old to selectively remove contaminant HF from HCl gas by contacting the gas with alumina or other suitable solid reactant masses and (2) that $CaCl_2$ readily reacts with HF at $55°$–$85°C$[3] to produce $CaF_2$. From Pring the examiner determined (1) that it is well known to remove fluoride gases by mixing with various basic salts or oxides or other dry substances capable of reacting with acids and (2) that $CaF_2$ is produced by reaction of a solid calcium compound with HF. From these teachings the examiner concluded that one skilled in the art would clearly recognize that HF contaminant could be selectively separated from HCl gas by reaction with "substantially anhydrous" $CaCl_2$.

Appellant submitted a declaration under 37 CFR 1.132 attesting to certain unexpected results from the use of his process. The declaration established that a commercial operation embodying appellant's invention realizes an HF removal efficiency of greater than 99.99%. Use of appellant's process also revealed a level of conversion and absorption[4] of HF from 90 to 100% greater than would be expected by the stoichiometric conversion of $CaCl_2$ to $CaF_2$ by reaction with HF. The examiner found the declaration unpersuasive for several reasons. Chief among these reasons was that the particular conditions of pressure, feed rate, and reactor retention time for the commercial operation described in the declaration, are not recited in the claims.

*The Board*

The board viewed the prima facie case of obviousness as follows:

Pring's broad teaching of the use of dry particulate solid material which will react with HF, absorb HF or both react with and adsorb HF, taken, with Lowdermilk, which shows that an aqueous solution of calcium chloride will react with HF gas to remove it from HCl gas and that the water in the system plays no part in the calcium chloride—HF reaction * * *,

---

2. The examiner cited Comstock to show that calcium chloride does not react with hydrogen chloride per se. The board's original opinion merely mentioned Comstock in stating the rejection. On reconsideration, the board said Comstock plays a "very minor role" in the rejection. Because Comstock adds nothing to the rejection, it has no effect upon our disposition of this case.

3. Appellant discloses that his process is conducted at $50°$–$120°F$ ($10°$–$49°C$).

4. The appellant, the examiner, and the board have used "absorption" and "adsorption" inter-

changeably. "Absorption * * * is a unit operation used in the chemical industry to separate gases by washing or scrubbing a gas mixture with a suitable liquid." 1 Kirk-Othmer Encyclopedia of Chemical Technology 53 (3d ed. 1978). "Adsorption is the selective collection and concentration, onto solid surfaces, of particular types of molecules contained in a liquid or gas." *Id.* at 531. We employ the latter as the more appropriate term in referring to the gas/solid phenomenon, apart from chemical reaction, which removes additional HF in appellant's process.

would clearly suggest to the worker of ordinary skill in the art that dry calcium chloride particles would meet the requirements of a material to be used in place of the particulate materials Pring recites.

While agreeing with the examiner's reasons for finding the Rule 132 declaration insufficient to rebut the prima facie case, the board provided additional reasons of its own. The asserted increase in HF removal efficiency of from 99.98% in Lowdermilk to 99.99% in appellant's process was deemed expectably within the limits of experimental error. As to appellant's showing of 90–100% increase in HF removal over that expected from stoichiometric conversion by chemical reaction alone, the board took the position that Pring's disclosure of chemical reaction, adsorption, or combination of both, rendered appellant's increased HF removal expected, absent comparative tests with the closest prior art, i. e., with Pring.

OPINION

Lowdermilk's and appellant's process are similar. The only fundamental difference is that Lowdermilk's is "wet" and appellant's is "dry." The difference acquires sig-. nificance, however, when it is realized that appellant's contribution to the art resides in the simplicity of his process. Appellant's essentially one-step process [5] may be compared, for example, to Lowdermilk's requirement for continuous steps of absorption, stripping, crystallization, and separation.

Appellant contends that neither the examiner nor the board established a prima facie case of obviousness from the teachings of Lowdermilk and Pring. The board's rationale was that there is nothing unobvious in substituting Pring's "dry" technique for Lowdermilk's "wet" technique. Appellant assails that view as erroneous because Pring's process cannot be used to separate HF and HCl (Pring's HF-remover, $CaCO_3$, reacts with both HCl and HF), and because $CaCO_3$ is not water soluble, as is Lowdermilk's HF-remover, $CaCl_2$.[6]

■ We hold, on the entire record, that appellant has established the unobviousness of his "substantially anhydrous" process. It is unnecessary to discuss whether a prima facie case was made out where, as here, the record is such as to overcome any prima facie case that may or may not have existed.

The board's basic error resides in its determination that Pring was the closest prior art and that absent comparative tests vis-à-vis Pring, there was no rebuttal of what the board considered a prima facie case.[7]

■ Given the enormous variety of technologies and claimed subject matter, no all-encompassing principle or test can be delineated for determining the closest prior art. However, an almost self-evident guideline would appear effective in most cases. A comparison of the *claimed* invention with the disclosure of each cited reference to determine the number of claim limitations in common with each reference, bearing in mind the relative importance of particular limitations, will usually yield the closest single prior art reference. See *In re Kronig,* 539 F.2d 1300, 190 USPQ 425 (Cust. & Pat.App.1976).

In the present case, Lowdermilk, not Pring, is the closest prior art. Lowdermilk's process differs from appellant's claimed process with respect to the single claim limitation "substantially anhydrous." Lowdermilk seeks removal of minor HF

5. The actual removal of HF from contaminated HCl gas occurs in a single step. However, when a given reactor charge of particulate $CaCl_2$ becomes spent, the reactor must be recharged with fresh $CaCl_2$. The spent solids ($CaF_2$) may be used as feed for a hydrofluoric acid plant.

6. In the view we take of the case, it is unnecessary to discuss other objections raised by ap-

pellant, directed particularly to certain arguments of the solicitor.

7. Comparison with the closest prior art was raised for the first time by the board. Before us, appellant says comparison with Pring is impossible because Pring's $CaCO_3$ removes both HCl and HF. The argument is cogent, but requires no discussion in view of the lack of need for any comparative testing with Pring.

contamination from HCl gas, and uses $CaCl_2$ as the HF-remover. Pring seeks removal of HF from air and uses $CaCO_3$ as the HF-remover.

The board's approach appears to be that Pring is the "closest" prior art for what it shows, i. e., dry technique, and that, therefore, some sort of data comparing appellant's process with that of Pring should be forthcoming. That approach lacks a basis in law. To apply that approach would place a burden upon the applicant to provide comparison tests of his invention with every cited reference, for each reference may be said to be the "closest" prior art for the particular limitation it allegedly discloses.

In *In re Wright*, 569 F.2d 1124, 1128, 193 USPQ 332, 336 (Cust. & Pat.App.1977), failure of a particular reference to constitute "the commercial standard" did not diminish its position as the closest prior art. Nor would the absence of a significant limitation, such as "substantially anhydrous" here, from a reference necessarily diminish its position as the closest prior art. If the one limitation not disclosed in the closest reference be sufficient to render the claimed subject matter as a whole unobvious, the reference remains the closest (though not patentability-defeating) prior art.

An applicant relying upon a comparative showing to rebut a prima facie case must compare his claimed invention with the closest prior art. *In re Malagari*, 499 F.2d 1297, 1303, 182 USPQ 549, 553 (Cust. & Pat.App.1974); *In re Chapman*, 357 F.2d 418, 423, 53 CCPA 978, 984, 148 USPQ 711, 715 (1966); see *In re Albrecht*, 514 F.2d 1389, 1394, 185 USPQ 585, 589 (Cust. & Pat.App.1975).[8] Appellant has done so here. The declaration attests to unexpected results, one of which—a level of HF removal by $CaCl_2$ from 90 to 100% greater than would be expected by the stoichiometric conversion of $CaCl_2$ to $CaF_2$ by reaction with HF—is significant. Lowdermilk, the closest prior art, removes no more than stoichiometric amounts of HF.

Though particular results appear unexpected in a comparison with the closest single prior art reference, the teaching of another reference may establish that those results would have been expected by those skilled in the art. That is not the case here.

To support its position that appellant's results were to be expected, the board cited from the Pring reference:

The mechanism of removal has not been fully determined. It may constitute a reaction between the acid gas and the basic properties of calcium carbonate or it may constitute an adsorption process or combinations of both.

Appellant explained the unexpected increase in removal of HF on the basis of an adsorption mechanism. We nonetheless disagree with the board's conclusion that the above-quoted passage renders that increase expected. First, nothing in Pring or Lowdermilk indicates any correspondence between the adsorptive characteristics of $CaCO_3$ (Pring) and those of $CaCl_2$ (appellant and Lowdermilk). Second, Pring teaches away from HF removal in excess of that stoichiometrically expected, by disclosing that the amount of $CaCO_3$ should be "not less than the theoretical amount required to react with [HF] * * *" and preferably should be "two to four times the theoretical amount required to react * * *."

Finally, the solicitor repeats the objection voiced by the examiner that the declaration is irrelevant because the claims specify neither the unexpected result nor the "features" that produce that result. We are aware of no law requiring that unexpected results relied upon for patentability be recited in the claims. The "features" referred to by the examiner are the conditions of pressure, feed rate, and reactor retention time for the commercial operation described in the declaration. We are equally unaware of any law requiring that

---

8. Direct comparison with the closest prior art is not required in all cases. This court has found indirect comparisons persuasive of unob-viousness. See *In re Blondel*, 499 F.2d 1311, 1317, 182 USPQ 294, 298 (Cust. & Pat.App. 1974).

commercial production parameters be claimed. Moreover, the "feature" responsible for appellant's unexpected results is recited in the claims, viz., "substantially anhydrous."

The decision of the board sustaining the rejections of claims 1–6 is *reversed.*

*REVERSED.*