**Application of Jimmie L. HOLLADAY.**

**Appeal No. 78–552.**

United States Court of Customs and Patent Appeals.

Oct. 26, 1978.

William A. VanSanten, Jr., Chicago, Ill. (Wegner, Stellman, McCord, Chicago, Ill.) attys. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, John W. Dewhirst, Washington, D. C., Associate Sol., Victor A. Di Palma, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, MILLER and FORD,* Judges.

FORD, Judge.

This is an appeal from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the examiner's rejection under 35 U.S.C. § 103 of claims 1–4 of application serial No. 478,040, filed June 10, 1974, for "Tire Changing Apparatus," a continuation-in-part of application serial No. 373,491, filed June 25, 1973. We *affirm.*

### Background

In order to mount a tubeless tire on a rim, the inner edges of the tire (beads) must be brought into sealing contact with the rim (seated). Bead seating is conventionally accomplished by first lifting the tire on the rim to cause the upper rim flange and upper bead to touch. This establishes a seal at that location and raises the lower bead away from the lower rim flange. Air is then directed into the tire interior through the space between the lower bead and rim (bead-rim interface). This creates a small pressure differential across the lower wall of the tire with the higher pressure on the inside of the tire. The tire expands and the lower bead touches and seals against the lower rim flange.

Appellant Holladay's invention relates to the means for directing air at the bead-rim interface. Holladay teaches that bead seating can be improved by making the air streams more highly directionalized. To achieve this goal Holladay utilizes nozzles having a linear internal passage at least one quarter of an inch long with a uniform cross section over that distance. Claim 1 is illustrative:

1. Tire bead seating apparatus, comprising:

a support structure; at least one nozzle mounted on said support structure having an outlet end adapted to be directed at the interface of a tire bead and wheel rim, said nozzle further having a linear, internal passage terminating at said outlet end and having a straight line length extending from said outlet of at least ¼ inch; said internal passage over said straight line length having a substantially uniform cross section; and means for supplying air under pressure to said internal passage.

Prior to Holladay's invention, bead seaters contained orifices or nozzles spaced around the periphery of the bead seater for directing air at the bead-rim interface. The references relied upon by the PTO, Corless[1] and Houston,[2] and the reference alleged by appellant to be equally close or closer to the instant invention, Mikovits et

---

* The Honorable Morgan Ford, United States Customs Court, sitting by designation.

1. U.S. patent No. 3,805,871, issued April 23, 1974, for "Tire Mounting, Bead Seating and Inflation Apparatus and Method of Use."

2. U.S. patent No. 3,786,852, issued January 22, 1974, for "Tire Changer Apparatus."

al.,[3] contain this feature. These references are silent with regard to the structure of the nozzles or orifices. However, Corless suggests that it is desirable to spread the air streams. Corless teaches that this spreading tends to create a ring or curtain of air continuous enough so that more air will be injected into than escapes from the bead-rim interface.

To establish the superiority of his invention, Holladay compared his bead seater, i. e., one with means for providing highly directionalized streams of air aimed at the bead-rim interface, with a commercially available bead seater made in accordance with the teachings of the Mikovits et al. patent, i. e., one which provided a substantially continuous ring of air aimed at the bead-rim interface. Holladay's device reliably seated beads at pressures of 120 psi and above, whereas the Mikovits et al. bead seater required pressures of 180 psi and above for reliable bead seating on "the problem wheel for the industry."

The examiner rejected appellant's claims citing Houston and Corless as prior art. The board affirmed this rejection, discussing only the Corless reference and concluding that the Houston patent was merely cumulative. The board decided that Corless' disclosure of using nozzles as orifice means coupled with its references to aiming jets of air at the bead-rim interface was sufficient to suggest appellant's use of a long enough nozzle for providing directional air flow as distinguished from the turbulent flow obtained with apertures of no material thickness. The board disagreed with appellant's contention that the reference in Corless to a continuous ring of air taught away from the present invention, pointing out that Corless does not preclude said ring from having gaps.

The board reviewed the affidavit by the inventor, Holladay, which established the superiority of Holladay's device (i. e., a bead seater with means for providing highly directionalized streams of air at the bead-rim interface) over the device disclosed in the Mikovits et al. patent. Relying on our decision in *In re Swentzel*, 219 F.2d 216, 42 CCPA 757, 104 USPQ 343 (1955), the board reasoned that since Mikovits et al. was not a reference relied upon by the examiner, the comparison between appellant's device and the Mikovits et al. device was insufficient to show the superiority of the instant device over the prior art.

## OPINION

### Closest Prior Art

▮ The board's conclusion that a showing of superiority over the prior art requires a comparison between the claimed invention and a reference relied on by the examiner is incorrect. As we stated in our recent decision in *In re Merchant*, 575 F.2d 865, 869, 197 USPQ 785, 788 (Cust. & Pat. App.1978): "An applicant relying upon a comparative showing to rebut a prima facie case must compare his claimed invention with the *closest prior art.*" (Emphasis added.) While in most cases the closest prior art will be the art relied on by the examiner, this is not necessarily so. It is conceivable that two or more pieces of prior art could be equally close to the invention, and yet only one of them applied against the claims by the examiner.

▮ Where two pieces of prior art are in fact equally close to the claimed invention, there is no logical reason for requiring an applicant to make a comparison with one instead of the other. On the other hand, practical considerations favor allowing the applicant to choose between them. Prior art devices are sometimes unavailable for testing. They may be disclosed in "paper patents" on inventions which have never been reduced to practice. Where the applicant uncovers a piece of prior art actually used in the real world and establishes that its teachings are equal to the relevant disclosure in a "paper patent" relied upon in the examiner's rejection, it would be unfair

---

**3.** U.S. patent No. 3,937,264, issued February 10, 1976, for "Bead Seating and Inflation Apparatus for a Tire Changing Stand."

not to permit the applicant to make his comparison with the commercially used piece of prior art.

■ The board's reliance on our decision in *In re Swentzel*, 219 F.2d 216, 42 CCPA 757, 104 USPQ 343 (1955) to reach the contrary result is misplaced. *Swentzel* did not involve evidence of comparative testing against prior art not cited by the examiner. In *Swentzel* the applicant failed to introduce *any* evidence of comparative testing. The decision in *Swentzel* merely stands for the proposition that a showing of superiority over the prior art requires evidence of comparative testing in the record and not mere assertions by counsel in the briefs. This holding is correct and is not affected by anything we say here.

### Breadth of Claims

■ The claims on appeal call for a bead seater having at least one nozzle for providing air aimed at the bead-rim interface. The nozzle or nozzles must have a linear internal passage at least one quarter of an inch long with a uniform cross section over that distance. The claims, however, do not include any limitations with regard to the spacial relationship between the nozzles and the bead-rim interface. Nor do they contain any upper limitation on the number of nozzles.

The solicitor points out that these claims are so broad that they would read on bead seaters that did not direct highly directionalized air streams at the bead-rim interface. We agree. Under the present claim language, the nozzles could be placed in such close proximity to each other and so far away from the bead-rim interface that they would provide a continuous ring of air directed at the bead-rim interface and not the highly directionalized air streams taught by appellant.

Appellant's response that such a bead seater is impractical and would never be constructed because the extra nozzles would be expensive and unnecessary misses the point. Appellant's claims cover bead seaters that do not provide for highly directionalized air streams. However, appellant's evidence is only directed at establishing the nonobviousness of bead seaters with means for providing highly directionalized air streams. Thus, this evidence does not establish the nonobviousness of the instant invention as claimed. Appellant's contention that the board misconstrued the teachings of Corless fails for the same reason. It does not matter whether or not Corless' suggestion to spread the air streams constitutes a teaching away from appellant's concept of highly directionalized air streams, since the invention as claimed is not limited to bead seaters having highly directionalized air streams.

Accordingly, for the reasons set forth herein, the decision of the board is *affirmed*.

AFFIRMED.