**In re Hans OETIKER.**

**No. 91–1026.**

United States Court of Appeals, Federal Circuit.

Oct. 13, 1992.

Paul M. Craig, Jr., Washington, D.C., argued for appellant.

John W. Dewhirst, Office of the Sol., Arlington, Va., argued for appellee. With him on the brief were Fred E. McKelvey, Sol. and Robert D. Edmonds, Associate Sol.

Before NIES, Chief Judge, NEWMAN and PLAGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Hans Oetiker appeals the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences, holding unpatentable claims 1–14 and 16–21, all of the claims in patent application No. 06/942,694.[1] Oetiker appeals on procedural and substantive grounds.

# I

## PROCEDURE

### Background

All of the claims were finally rejected for obviousness in terms of 35 U.S.C. § 103. The Board, upholding the rejection, stated that "the examiner has ... established a *prima facie* case of obviousness ... which is unrebutted by any objective evidence of nonobviousness". Oetiker stated that this Board holding was the first rejection of his claims for being *"prima facie* obvious", and filed rebuttal evidence with a petition for reconsideration. The Board declined to consider the new evidence or change its decision.

Oetiker states that a holding of *prima facie* obviousness means, in patent examination, that the claimed invention is subject

---

1. *Ex parte Oetiker,* No. 89–2230 (Bd.Pat.App. & Interf. May 31, 1990; on reconsideration, August 23, 1990).

to a rebuttable presumption of obviousness; that is, if the applicant can provide evidence or argument in support of unobviousness, such evidence and argument will be considered, and the question of patentability will be redecided on the entire record. Oetiker states that a rejection made in the words *"prima facie* obvious" is understood by patent examiners and practitioners as an invitation to provide such rebuttal evidence.

Thus Oetiker argues that a holding by the Board of *prima facie* obviousness is a new ground of rejection, for during prosecution the examiner did not reject the claims in these words. Treating it as such, Oetiker offered affidavit evidence not previously filed, and requested reconsideration on the basis of this new evidence, or remand to the examiner for this purpose, in accordance with 37 C.F.R. § 1.196(b):

§ 1.196(b) ... When the Board ... makes a new rejection of an appealed claim, the appellant may exercise either of the following two options ...:

(1) The appellant may submit ... a showing of facts ... and have the matter reconsidered by the examiner in which event the application will be remanded to the examiner....

(2) The appellant may have the case reconsidered under § 1.197(b) by the Board ... upon the same record.

The Board on reconsideration granted neither of the options of § 1.196(b), stating that it had not made a new rejection.

At argument before this court the Commissioner's counsel suggested that Oetiker could refile his patent application, pay a new fee, and obtain review of this new evidence in a new examination. Oetiker states that he was entitled to a complete examination, and did not get it.

### Discussion

■ The *prima facie* case is a procedural tool of patent examination, allocating the burdens of going forward as between examiner and applicant. *In re Spada*, 911 F.2d 705, 707 n. 3, 15 USPQ2d 1655, 1657 n. 3 (Fed.Cir.1990). The term *"prima facie* case" refers only to the initial examination step. *In re Piasecki*, 745 F.2d 1468, 1472, 223 USPQ 785, 788 (Fed.Cir.1984); *In re Rinehart*, 531 F.2d 1048, 1052, 189 USPQ 143, 147 (CCPA 1976). As discussed in *In re Piasecki*, the examiner bears the initial burden, on review of the prior art or on any other ground, of presenting a *prima facie* case of unpatentability. If that burden is met, the burden of coming forward with evidence or argument shifts to the applicant.

After evidence or argument is submitted by the applicant in response, patentability is determined on the totality of the record, by a preponderance of evidence with due consideration to persuasiveness of argument. *See In re Spada, supra; In re Corkill*, 771 F.2d 1496, 1500, 226 USPQ 1005, 1008 (Fed.Cir.1985); *In re Caveney*, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir. 1985); *In re Johnson*, 747 F.2d 1456, 1460, 223 USPQ 1260, 1263 (Fed.Cir.1984).

■ If examination at the initial stage does not produce a *prima facie* case of unpatentability, then without more the applicant is entitled to grant of the patent. *See In re Grabiak*, 769 F.2d 729, 733, 226 USPQ 870, 873 (Fed.Cir.1985); *In re Rinehart, supra.*

■ In reviewing the examiner's decision on appeal, the Board must necessarily weigh all of the evidence and argument. An observation by the Board that the examiner made a *prima facie* case is not improper, as long as the ultimate determination of patentability is made on the entire record. *In re Piasecki*, 745 F.2d at 1472, 223 USPQ at 788; *In re Rinehart*, 531 F.2d at 1052, 189 USPQ at 147.

■ The record here reveals that the application was fully prosecuted. References were cited and applied by the examiner, the applicant responded with argument, and the examiner then issued a final rejection, stating why he was not persuaded by the applicant's argument. On review the Board stated that its decision was reached "after careful consideration of the appealed claims, the evidence of obviousness relied upon by the examiner and the arguments advanced by the appellant and the examiner". The Board explained why it was un-

persuaded by Oetiker's arguments on appeal. We discern no irregularity in the procedure. The Board, in explaining that the examiner's rejections constituted a *prima facie* case of obviousness, did not make a new rejection.

■ Oetiker also argues that the concept of a *"prima facie* case of obviousness" has no role outside of the chemical arts. Oetiker refers to the origins of this term in the chemical practice, where properties may not be apparent from chemical structure. Oetiker distinguishes mechanical inventions, where the properties and workings of a mechanical device are apparent in the drawing of the structure. We think that the PTO is correct in treating the concept of the *prima facie* case as of broad applicability, for it places the initial burden on the examiner, the appropriate procedure whatever the technological class of invention. That a *prima facie* case may be established, or rebutted, by different forms of evidence in various technologies does not restrict the concept to any particular field of technology. "[T]he requirement of unobviousness in the case of chemical inventions is the same as for other types of inventions". *In re Johnson,* 747 F.2d at 1460, 223 USPQ at 1263. This procedural tool is recognized in fields outside of the chemical arts. *E.g., In re Benno,* 768 F.2d 1340, 226 USPQ 683 (Fed.Cir.1985); *In re McCarthy,* 763 F.2d 411, 226 USPQ 99 (Fed.Cir.1985); *In re De Blauwe,* 736 F.2d 699, 222 USPQ 191 (Fed.Cir.1984).

The Board's usage of the term *prima facie* was imprecise for, as discussed *supra,* the term *"prima facie* obvious" relates to the burden on the examiner at the initial stage of the examination, while the conclusion of obviousness *vel non* is based on the preponderance of evidence and argument in the record. However, it was clear that the Board did not make a new rejection. Therefore the Board did not err in declining to consider at that stage the proffered evidence of commercial success.

## II

### THE MERITS

Oetiker's invention is an improvement in a "stepless, earless" metal clamp, a hose clamp that was generally described in an earlier '004 patent of Oetiker, but that differs in the presence of a feature that is described as a preassembly "hook". This "hook" serves both to maintain the preassembly condition of the clamp and to be disengaged automatically when the clamp is tightened.

The cited references were Oetiker's earlier-granted '004 patent, combined with a certain Lauro '004 patent. Lauro describes a plastic hook and eye fastener for use in garments, in which "unitary tabs of sewing needle puncturable plastic material ... are affixable to clothing and the like by sewing". Oetiker argues that there is no suggestion or motivation to the artisan to combine the teachings of the cited references, and that Lauro is nonanalogous art. Oetiker concludes that these references were improperly combined; that a person of ordinary skill, seeking to solve the problem facing Oetiker, would not look to the garment art for the solution. Oetiker also argues that even if combined the references do not render the claimed combination obvious.

The examiner stated that "since garments commonly use hooks for securement", a person faced with the problem of unreliable maintenance of the pre-assembly configuration of an assembly line metal hose clamp would look to the garment industry art. The examiner explained further by stating that "Appellant's device as disclosed could be utilized as part of a garment". The Board did not repeat or support the examiner's argument, or discuss its relevance. Indeed, the argument is not supportable. However, the Board held that the Lauro reference, although not "within the appellant's specific field of endeavor" is nonetheless "analogous art" because it relates to a hooking problem, as does Oetiker's invention.

The Board apparently reasoned that all hooking problems are analogous. At least, that is the argument now pressed by the Commissioner. The Commissioner states in his brief on appeal that "A disengagea-

ble catch, such as that used by Oetiker, is a common everyday mechanical concept that is variously employed in door latches and electrical and other switches, as well as in the hook and eye apparatus disclosed by Lauro". No such references were cited, however. While this court may take judicial notice of common everyday mechanical concepts in appropriate circumstances, the Commissioner did not explain why a "catch" of unstated structure in an electrical switch, for example, is such a concept and would have made Oetiker's invention obvious. Indeed, the Commissioner did not respond to Oetiker's argument that the cited references provide no teaching or suggestion that Lauro's molded hook and eye fastener, even if combined with Oetiker's '004 clamp, would achieve Oetiker's purpose.

In order to rely on a reference as a basis for rejection of the applicant's invention, the reference must either be in the field of the applicant's endeavor or, if not, then be reasonably pertinent to the particular problem with which the inventor was concerned. *See In re Deminski*, 796 F.2d 436, 442, 230 USPQ 313, 315 (Fed.Cir.1986). Patent examination is necessarily conducted by hindsight, with complete knowledge of the applicant's invention, and the courts have recognized the subjective aspects of determining whether an inventor would reasonably be motivated to go to the field in which the examiner found the reference, in order to solve the problem confronting the inventor. We have reminded ourselves and the PTO that it is necessary to consider "the reality of the circumstances", *In re Wood*, 599 F.2d 1032, 1036, 202 USPQ 171, 174 (CCPA 1979)—in other words, common sense—in deciding in which fields a person of ordinary skill would reasonably be expected to look for a solution to the problem facing the inventor.

It has not been shown that a person of ordinary skill, seeking to solve a problem of fastening a hose clamp, would reasonably be expected or motivated to look to fasteners for garments. The combination of elements from non-analogous sources, in a manner that reconstructs the applicant's invention only with the benefit of hindsight, is insufficient to present a *prima facie* case of obviousness. There must be some reason, suggestion, or motivation found in the prior art whereby a person of ordinary skill in the field of the invention would make the combination. That knowledge can not come from the applicant's invention itself. *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 678–79, 7 USPQ2d 1315, 1318 (Fed.Cir. 1988); *In re Geiger*, 815 F.2d 686, 687, 2 USPQ2d 1276, 1278 (Fed.Cir.1987); *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1147, 227 USPQ 543, 551 (Fed.Cir. 1985).

Oetiker's invention is simple. Simplicity is not inimical to patentability. *See Goodyear Tire & Rubber Co. v. Ray–O–Vac Co.*, 321 U.S. 275, 279, 64 S.Ct. 593, 594, 88 L.Ed. 721 (1944) (simplicity of itself does not negate invention); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1572, 1 USPQ2d 1593, 1600 (Fed.Cir.) (the patent system is not foreclosed to those who make simple inventions), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987).

We conclude that the references on which the Board relied were improperly combined. Accordingly, the Board erred in holding the claims unpatentable under section 103. The rejection of claims 1–4 and 16–21 is

REVERSED.

NIES, Chief Judge, concurring.

I agree with the panel decision and write only to express my understanding of the language that there must be some teaching, reason, suggestion, or motivation found "in the prior art" or "in the prior art references" to make a combination to render an invention obvious within the meaning of 35 U.S.C. § 103 (1988). Similar language appears in a number of opinions [1]

---

**1.** *See, e.g., Symbol Technologies, Inc. v. Opticon, Inc.,* 935 F.2d 1569, 1576, 19 USPQ2d 1241, 1246 (Fed.Cir.1991); *In re Gorman,* 933 F.2d 982, 986,

18 USPQ2d 1885, 1888 (Fed.Cir.1991); *In re Mills,* 916 F.2d 680, 682, 16 USPQ2d 1430, 1432 (Fed.Cir.1990); *Smithkline Diagnostics, Inc. v.*

and if taken literally would mean that an invention cannot be held to have been obvious unless something specific in a prior art reference would lead an inventor to combine the teachings therein with another piece of prior art.

This restrictive understanding of the concept of obviousness is clearly wrong. Other statements in opinions express the idea more generally. We have stated, for example, that the test is: "whether the teachings of the prior art, taken as a whole, would have made obvious the claimed invention," *In re Gorman*, 933 F.2d at 986, 18 USPQ2d at 1888, and "what the combined teachings ... would have suggested to one of ordinary skill in the art," *In re Young*, 927 F.2d 588, 591, 18 USPQ2d 1089, 1091 (Fed.Cir.1991). We have also stated that "the prior art as a whole must suggest the desirability ... of making the combination." *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1051, 5 USPQ2d 1434, 1438 (Fed.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1462, 221 USPQ 481, 488 (Fed.Cir.1984).

I believe that it would better reflect the concept of obviousness to speak in terms of "*from* the prior art" rather than simply "*in* the prior art." The word "from" expresses the idea of the statute that we must look at the obviousness issue through the eyes of one of ordinary skill in the art and what one would be presumed to know with that background. What would be obvious to one of skill in the art is a different question from what would be obvious to a layman. An artisan is likely to extract more than a layman from reading a reference.

In any event, variance in the language used in opinions does not change the nature of the statutory inquiry. Under section 103, subject matter is unpatentable if it

"would have been obvious ... to a person having ordinary skill in the art." While there must be some teaching, reason, suggestion, or motivation to combine existing elements to produce the claimed device, it is not necessary that the cited references or prior art specifically suggest making the combination. *In re Nilssen*, 851 F.2d 1401, 1403, 7 USPQ2d 1500, 1502 (Fed.Cir.1988). Such suggestion or motivation to combine prior art teachings can derive solely from the existence of a teaching, which one of ordinary skill in the art would be presumed to know, and the use of that teaching to solve the same or similar problem which it addresses. *In re Wood*, 599 F.2d 1032, 1037, 202 USPQ 171, 174 (CCPA 1979). *See, also, EWP Corp. v. Reliance Universal, Inc.*, 755 F.2d 898, 906–07, 225 USPQ 20, 25 (Fed.Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *In re Sernaker*, 702 F.2d 989, 995, 217 USPQ 1, 6 (Fed.Cir.1983). *See also, Ex parte Clapp*, 227 USPQ 972, 973 (Bd.Pat.App. & Inter. 1985) ("To support the conclusion that the claimed combination is directed to obvious subject matter, either the references must expressly or implicitly suggest the claimed combination or the examiner must present a convincing line of reasoning as to why the artisan would have found the claimed invention to have been obvious in light of the teachings of the references.").

In sum, it is off the mark for litigants to argue, as many do, that an invention cannot be held to have been obvious unless a suggestion to combine prior art teachings is found *in* a specific reference.

PLAGER, Circuit Judge, concurring.

I join in the carefully-reasoned and well-written opinion of Judge Newman. With regard to Part I dealing with the PTO procedure, her explanation of the meaning and application of the 'prima facie case' concept should help clarify an area that remains marked by a lack of clarity. The

*Helena Laboratories Corp.*, 859 F.2d 878, 887, 8 USPQ2d 1468, 1475 (Fed.Cir.1988); *In re Dow Chemical Co.*, 837 F.2d 469, 473, 5 USPQ2d 1529, 1531 (Fed.Cir.1988); *In re Stencel*, 828 F.2d 751, 755, 4 USPQ2d 1071, 1073 (Fed.Cir. 1987); *Ashland Oil, Inc. v. Delta Resins & Ref-*

*ractories, Inc.*, 776 F.2d 281, 293, 227 USPQ 657, 664 (Fed.Cir.1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986); *In re Grabiak*, 769 F.2d 729, 732, 226 USPQ 870, 872 (Fed.Cir.1985).

need for that discussion, however, illustrates the pitfalls of the 'prima facie' practice of the PTO, and the difficulties created by this particular legalistically convoluted concept.

An applicant for a patent is entitled to the patent unless the application fails to meet the requirements established by law. It is the Commissioner's duty (acting through the examining officials) to determine that all requirements of the Patent Act are met. The burden is on the Commissioner to establish that the applicant is not entitled under the law to a patent. *In re Warner,* 379 F.2d 1011, 1016, 154 USPQ 173, 177 (CCPA 1967), *cert. denied* 389 U.S. 1057, 88 S.Ct. 811, 19 L.Ed.2d 857 (1968). In rejecting an application, factual determinations by the PTO must be based on a preponderance of the evidence, and legal conclusions must be correct. *In re Caveney,* 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985).

The process of patent examination is an interactive one. *See generally,* Chisum, *Patents,* § 11.03 *et seq.* (1992). The examiner cannot sit mum, leaving the applicant to shoot arrows into the dark hoping to somehow hit a secret objection harbored by the examiner. The 'prima facie case' notion, the exact origin of which appears obscure (*see In re Piasecki,* 745 F.2d 1468, 1472, 223 USPQ 785, 788 (Fed.Cir.1984)), seemingly was intended to leave no doubt among examiners that they must state clearly and specifically any objections (the prima facie case) to patentability, and give the applicant fair opportunity to meet those objections with evidence and argument. To that extent the concept serves to level the playing field and reduces the likelihood of administrative arbitrariness.

But the ultimate decision that must be made by the PTO in the examination process, and by this court on appeal, is not whether a prima facie case for rejection was made; the only question is whether, on the whole record, the applicant has met the statutory requirements for obtaining a patent. When a final rejection is described in terms of whether a prima facie case was made, that intermediate issue diverts atten-

tion from what should be the question to be decided.

Specifically, when obviousness is at issue, the examiner has the burden of persuasion and therefore the initial burden of production. Satisfying the burden of production, and thus initially the burden of persuasion, constitutes the so-called prima facie showing. Once that burden is met, the applicant has the burden of production to demonstrate that the examiner's preliminary determination is not correct. The examiner, and if later involved, the Board, retain the ultimate burden of persuasion on the issue.

If, as a matter of law, the issue is in equipoise, the applicant is entitled to the patent. Thus on appeal to this court as in the PTO, the applicant does not bear the ultimate burden of persuasion on the issue. In the end there is no reason there or here to argue over whether a 'prima facie' case was made out. The only determinative issue is whether the record as a whole supports the legal conclusion that the invention would have been obvious.