NEWMAN, Circuit Judge,
dissenting.
This litigation concerns the influenza drug zanamivir, marketed under the trademark Relenza®. The PTAB and now this court rule that it was obvious to administer this drug by oral inhalation, although there is no reference, Ho prior art, no suggestion, proposing that this mode of application might succeed, or that it should be tried. There was evidence of skepticism even as oral inhalation was evaluated. There was no contrary evidence. The evidence' on which the Board and now this court rely is the evidence in the patent application itself, describing oral inhalation, its benefits, and its effectiveness. Upon learning this information from this inventor’s disclosure, the Board found that it was obvious, and my colleagues agree that it is obvious to them.
Zanamivir was a known drug for treatment of influenza, administered by nasal inhalation, for the influenza virus was believed to infect the upper respiratory tract. The PTAB recognized that “the Examiner acknowledges that Von Itzstein II does not specifically teach inhalation of the compound through the mouth.” PTAB Op: 7. Nor does any other reference teach or suggest treatment of influenza by oral inhalation of this compound or any related compound. My colleagues nonetheless deem this treatment of influenza obvious on the ground that inhalation occurs only through the nose or the mouth. Thus the court rules that the discovery of effective treatment by oral inhalation is obvious to the court, although not obvious to experts, and not suggested in the prior art.
The applicant provided the expert opinion of Dr. Hayden, who discussed a large international study in which he participated, and concluded that , the “effectiveness of orally inhaled zanamivir as compared with nasal administration ... could be considered an unexpected result”:
In part because uncertainties existed regarding the transmission and pathogenesis of influenza as of the effective filing date of the present application, it was ■ unclear whether oral inhalation of zana-mivir with the dry powder inhaler device utilized in the studies would be clinically effective alone for prevention or treatment of naturally occurring uncomplicated influenza. In view of this uncertainty, the clinical effectiveness of orally inhaled zanamivir as compared to nasal administration for prevention of naturally occurring uncomplicated influenza above could be considered an unexpected result. Similarly, the effectiveness of orally inhaled zanamivir without intrana-sal zanamivir for treatment of naturally occurring uncomplicated influenza alone could be considered an unexpected result.
Decl. of Frederick G. Hayden, M.D. at 7 (filed in U.S. Patent Application No. 08/737,141 Mar. 12, 2013). Both the Board and the court discount Dr. Hayden’s opinion because these experiments were not conducted for patent purposes but for scientific purposes, and were not direct com *1380 parisons with the Board’s view of the closest prior art. Dr. Hayden explained that:
Although this study was not designed to compare directly the effects of zanamivir administration by oral inhalation alone to the effects of zanamivir administration by intranasal administration alone, •it nonetheless found that the oral inhalation route alone provided unexpectedly significant activity without requiring in-tranasal administration for effective treatment of influenza virus illness-....
Id. at 3. Dr. Hayden explained that it was unexpected that this study “demonstrated the therapeutic value of drug delivery by the oral inhalation route to the posterior oropharynx (throat) and lower respiratory tract to treat naturally occurring influenza virus infection.” Id. at 4.
Dr. Hayden also discussed a study that showed that the rate of influenza infection during 5 days of prophylaxis treatment was 6% for nasal inhalation alone—the same as for the placebo group—but was 2-3% for the group that received zanamivir “both by oral inhalation and intranasally.” Id. at 4, citing Kaiser et al. Short-Term, Treatment with Zanamivir to Prevent Influenza: Results of a Placebo-Controlled Study, 30 Clinxoal Infectious Diseases 587-89 (2000). Dr. Hayden concluded that “[t]he results of this study supported a difference in protection between intranasal zanamivir and orally inhaled zanamivir” and “suggest the importance of delivering zanamivir to the posterior oropharynx and/or lower respiratory tract for the prevention of naturally acquired influenza virus illness.” Id. at 4-5, As quoted supra, Dr. Hayden stated that this result was unpredictable and unexpected. Id. at .7.
As stated in In re Dihrendra Ranchhoddas Merchant, 575 F.2d 865, 868 (CCPA 1978), “The Board’s basic error resides in its determination that Pring was the closest prior art and that absent comparative tests vis-a-vis Pring, there was no rebuttal of what the Board considered a prima facie case.” The Board erred in refusing to consider Dr. Hayden’s results and in criticizing his tests as not in accordance with the Board’s design of patent-oriented directly comparable experiments. The Board disregarded that Von Itzstein I only evaluated administration by nasal administration of a solution. See International Patent Application No. WO91/16320 at 54 (Oct. 31, 1991) (“Von Itzstein I”) (describing intranasal administration of aqueous solution). The fact that scientific studies did not compare oral inhalation to liquid nasal administration does not mean the comparative evidence can be disregarded entirely. Dr. Hayden explained his conclusions; the Board should have considered them.
The Board did not hold that the result here was expected. However, the Board held that the claimed subject matter was obvious, on a rationale akin to “obvious to try.” However, in the unpredictable arts such as medicinal treatment, for a method to be obvious to try, there must be some suggestion in the prior art that the method would have a reasonable likelihood of success.
There is no suggestion in the prior art to pursue oral inhalation, for the teachings of Von Itzstein II must be taken in context. It is noteworthy that there is extensive discussion in Von Itzstein II directed to all of the known forms of oral administration of this product—plus parenteral, topical, rectal, vaginal, and intranasal administration—but Von Itzstein II lacks any mention of oral inhalation. The Von Itzstein II reference, which is the primary reference relied on by the Board, states:
Pharmaceutical formulations include those suitable for oral, rectal, nasal, topical, (including buccal and sub-lingual), vaginal or parenteral (including intramuscular, sub-cutaneous and intrave *1381 nous) administration or in a form suitable for administration by inhalation or insufflation. The formulations may, where appropriate, be conveniently presented in discrete dosage units and may be prepared by any of the methods well known in the art of pharmacy. All methods include the step of bringing into association the active compound with liquid carriers finely divided solid carriers or both and then, if necessary, shaping the product into the desired formulation.
Pharmaceutical formulations suitable for oral administration may conveniently be presented as discrete units such as capsules, cachets or tablets each containing a predetermined amount of the active ingredient; as a powder or granules; as a solution, a suspension or as an emulsion. The active ingredient may also be presented as a -bolus, electuary or paste. Tablets and capsules for oral administration may contain conventional excipients such as binding agents, fillers, lubricants, disintegrants, or wetting agents. The tablets may be coated according to methods well known in the art. Oral liquid preparations may be in the form of, for example, aqueous or oily suspensions, solutions, emulsions,- syrups or elixers,- or may be presented as a dry product for constitution with water. or other suitable vehicle before use. Such liquid preparations may contain conventional additives such as suspending agents, emulsifying agents, non-aqueous vehicles (which may include edible oils), or preservatives.[1]
Australian Patent No. AU-A-27242/92 at 8-9 (April 4, 1993). The description of suitable- formulations continues for almost three more pages, but does not mention or suggest oral inhalation. No disclosure of administration of zanamivir by oral inhalation can be found here or anywhere else in the prior art. One wonders how it can nonetheless be obvious, particularly in view of the specific teaching in Von Itz-stein I that nasal administration is the mode for administering zanamivir. To make a prima facie case, the prior art must provide, and the Board must identify, a reason or motivation to depart from the prior art; no reference or combination of references has been so identified—even in hindsight.
It cannot be “obvious to try” the only form of oral administration that is absent from the Von Itzstein recitations. In KSR v. Teleflex the Court explained that “obvious to try” may arise “where there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.” 550 U.S. 398, 416, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). The Board’s conclusion relies on a general finding that “inhalation can only be carried out via the nose or the mouth.” PTAB Op. 11. But this is a flawed rationale, for Von Itzstein II teaches a totality of “oral, rectal, nasal, topical (including buccal and sub-lingual), vaginal or parenteral (including intramuscular, sub-cutaneous and intravenous) administration or in a form suitable for administration by inhalation or insufflation.” Von Itzstein II at 8. The omission of oral inhalation from this compilation of all the “known options” for this drug makes conspicuously clear that oral inhalation was not an “identified predictable solution.” The Board’s ruling that oral inhalation was nonetheless obvious is not supported by substantial evidence. See In re Huai- *1382 Hung Kao, 639 F.3d 1067, 1067 (Fed. Cir. 2011) (“The Board’s own conjecture does not supply the .requisite substantial evidence to support the rejections — ”).
It was undisputed that, at the time of this invention, it was believed' that the influenza virus infected primarily the upper respiratory tract, that is, the nasal passages. It was undisputed that there was not a reasonable expectation that administration to the lower respiratory tract by oral inhalation would be effective. The Yon Itzstein references do not show or suggest oral inhalation, either for zanamivir or for any related compounds. The Board’s statement that inhalation is “reasonably understood” to include oral inhalation, PTAB Op. 12, is without authority. There was no record showing or supporting such an understanding. There was no suggestion or hint in any reference that treatment by oral inhalation would have a reasonable expectation of success.
This mode of therapy is taught only by this inventor. There was not substantial evidence to support the Board’s ruling of obviousness. From the court’s flawed analysis and unsupported' conclusion, I respectfully dissent.

. This is the text on which the panel majority appears to rely for the statement that "Von Itzstein II expressly discloses administration through ‘oral,’ ‘nasal,’ or other forms ‘suitable .for administration by inhalation.' ” Maj. Op. at 1378.