MOORE, Circuit Judge,
dissenting.
I would find for the patentee. This is a two-reference obviousness rejection (Ya-mada and King or Yamada and Strassh-eimer), which I would reverse. The Board failed to provide substantial evidence that it would have been obvious to modify Ya-mada and it failed to determine the level of ordinary skill in the art.
The claims at issue are directed to a flash chromatography cartridge to be used in low pressure liquid chromatography (LPLC). The primary reference, Yamada, is directed to a column device for use in LPLC. The Board determined that Yama-da disclosed all the elements of the claims at issue except the inclined abutting surfaces of the cap and the lip of the container. The Board concluded that one of skill in the art would have been motivated to modify the Yamada structure by using the sealing structure disclosed in King or Strassheimer, both of which are directed to container closures for soda pop bottles. *1362 I dissent from the majority because this record does not contain substantial evidence that one of skill in the relevant art would have modified the chromatography cartridge in Yamada by replacing its sealing configuration with that of a soda pop bottle.
The Board concluded that “known problem of leakage in threaded connections of plastic LPLC cartridges ... provides a reason for one of ordinary skill in the art to have turned to King or Strassheimer to improve the sealing arrangement [of] Ya-mada.” Board Op. at *8. The majority cites two factual findings in support of this conclusion — that Yamada’s use of an 0-ring “implicitly acknowledges” a “potential leakage issue,” and that the inventors’ statements in the patents allegedly identify a prior art leakage problem. Maj. Op. at 1358; see also Board Op. at *7. Neither factual finding is supported by substantial evidence. These were contested inter partes reexaminations with experts on both sides, yet there is no testimony or other evidence of a known leakage problem in prior art cartridges that would have motivated one of skill in the art to modify Yamada.
The Board’s finding regarding Yamada’s O-ring, Board Op. at *7, ignores the reality of the situation, which is that Yamada did not have a leakage problem. Yamada does not disclose leakage problems. Id. Even Biotage’s expert admitted that Yamada’s configuration did not have leakage problems at the pressures identified by the patents-at-issue. J.A. 501 ¶ 9, 613 ¶ 9, 713 ¶ 9. In fact, the Board found that Yamada’s configuration “ensure[s] liquid tightness.” Board Op. at *5. The time delay between the Yamada configuration and the inventions at issue also supports the fact that one of skill in the art would not have modified Yamada because it did not have a leakage problem. Yamada’s earliest priority date is more than ten years before the earliest filing date of the patents-at-issue. There is absolutely no evidence even suggesting that one skilled in the art was aware of a leakage problem in Yamada’s design during those ten years. The Board’s conclusion that Yamada’s O-ring “implicitly” acknowledges a “potential” leakage problem such that one of skill in the art would have been motivated to modify Yamada is pure conjecture. We cannot rely on the Board’s speculation about a “potential” problem that, according to all of the evidence on record, never actually existed, to support a finding of obviousness. One of skill in the art would not have modified Yamada to fix a leakage problem that never existed in the first place. You wouldn’t seek to “improve [a] sealing arrangement” that doesn’t leak.
The patents at issue do say: “This operating pressure is sufficiently high that these cartridges, which have relatively large diameter bodies, leak at the seams. Threaded connections are thus not used to form the body when the body is made of polymer.” '061 patent col. 1 11. 16-19. As a preliminary matter, the statement, as the parties acknowledge, is inaccurate. Yama-da, for example, uses threaded connections. This statement, in the patents, is not a recognition of a known prior art problem that would have motivated one of skill in the art to want to modify the Yamada design. It was a problem identified, not in the prior art, but by these inventors.
It is troubling that the majority and the Board rely on the inventors’ disclosure of the problem their inventions solve as the primary basis for modifying the prior art. This is hindsight of the worst kind, “wherein that which only the invention taught is used against its teacher.” W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1553 (Fed.Cir.1983). The pat *1363 ents do not indicate that leakage was a problem identified in the prior art or a problem known to those of skill in the art. Rather they indicate that the claimed design will avoid leakage. These inventors identified a design problem, articulated it, and solved it. There is absolutely no evidence of the existence of a known leakage problem that would have motivated skilled artisans to modify Yamada. The Board is taking the ingenuity of these inventors and, without any record basis, attributing that knowledge to all skilled artisans as the motivation to make the inventions at issue. Hindsight, hindsight, hindsight.
These were inter partes reexamination proceedings between sophisticated parties. Both parties put on expert testimony regarding obviousness. Yet there is no evidence that the chromatography cartridges in Yamada had a leakage problem that skilled artisans would have been motivated to address. There is simply no evidence that one of skill in the art would have modified the Yamada cartridge using the soda pop bottle sealing mechanisms of King or Strassheimer to prevent a leakage problem that the Yamada cartridge did not have.
. I dissent for a second, independent reason. The Board found the claims obvious without resolving the level of skill in the art. Oral Argument at 24:59-25:31, available at http://oralarguments.eafc.uscourts. gov/default.aspx?fl=2013-1219.mp3. It is axiomatic that this is a “basic factual in-quirfy]” required of any obviousness determination. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In most cases, there is no dispute over the level of the skilled artisan. But in this case, the parties contested this factual issue throughout the proceedings, and inexplicably the Board never resolved it. Oral Argument at 19:57-20:32, 23:21-23:56, 24:59-25:31. The parties still dispute this issue on appeal. Compare Appellant’s Br. 21 (“A chemist analyzing organic compounds would not look to soda-pop bottles to solve problems with flash chromatography cartridges.”) (emphasis added), with Appellee’s Br. 28-29 (“SPP[] mischarac-terizes the relevant person of ordinary skill to whom knowledge of analogous art would be attributable.... [T]he relevant person of ordinary skill in the art ... would include a designer ... skilled in mechanical engineering.”) (emphasis added).
The Board’s failure to make this determination is especially pernicious where the analogous art question is far from clear. Soda pop bottles and methods for using chromatography cartridges are clearly not in the same field of endeavor. Instead, the dispute on appeal is whether the soda pop bottle references are both reasonably pertinent to the inventors’ problem. Maj. Op. at 1358-59; see also In re Oetiker, 977 F.2d 1443, 1447 (Fed.Cir.1992). “Reasonably pertinent” means “which fields a person of ordinary skill would reasonably be expected to look for a solution to the problem facing the inventor.” Oetiker, 977 F.2d at 1447 (emphasis added). An ordinarily skilled chemist would have likely looked to a different body of prior art than an ordinarily skilled mechanical engineer with industrial design experience. Even Biotage recognizes that the determination of the person of ordinary skill is inextricably linked to what art would have been analogous. Oral Argument at 25:31-25:43. We cannot answer the analogous art question without knowing who the person of ordinary skill is.
I would reverse because I conclude that the Board’s cancellation of the claims at issue was based entirely on hindsight reconstruction — there is no record evidence that one of skill in the art would have been motivated to modify Yamada with soda pop *1364 bottle sealing closures. And the Board cannot transfer the inventors’ identification of the motivation for their patented design to the skilled artisan when there is no record evidence that the skilled artisan possessed that knowledge. Finally, where the level of ordinary skill, as here, is hotly contested and would affect the scope of the analogous art, the Board must decide that factual issue. I respectfully dissent.